## Cancelmo's Estate.

The facts appear from the readjudication of

LAMORELLE, P. J., Auditing Judge.—The Auditing Judge having rejected the claim of the Citizens Bank and Trust Company of Tampa, Florida,

2

against testator for $35,000, with interest from June 15, 1927, exceptions were duly filed by counsel for the claimant, and on July 21, 1930, the court *in banc* reversed and allowed the claim as presented [13 D. & C. 732].

One of the exceptions filed by the claimant was that the Auditing Judge erred in not finding that the net proceeds of two notes, designated as the Gentile notes, for $11,541, should have been applied by way of credit. This exception, however, was not sustained.

Subsequently a petition was filed by counsel for the executor, praying for a citation directed to the Citizens Bank and Trust Company of Tampa, Florida, to show cause why the matter should not be recommitted to the Auditing Judge for the purpose of fixing the exact amount due the claimant, and on September 5, 1930, the court granted the citation prayed for, and directed all proceedings to stay meanwhile.

In this petition it is averred, *inter alia*, that the claimant collected for the Growers Sales Company a sum exceeding $11,000 and that no credit for said sum or any part thereof was given, and the petition annexed shows that the sum collected was that due on said Gentile notes.

After the issuance of this citation a writing was signed by counsel for the claimant and counsel for the executor, in which it was stipulated and agreed that the matter should be referred back to the Auditing Judge for the purpose of ascertaining the amount due the claimant, and for such purpose to take such testimony and examine such witnesses and records as might be necessary to determine the amount due, with the same force and effect as if a citation had issued and an answer thereto had been filed with the claimant. This stipulation was not filed at the time it was entered into, and in order to properly perfect the record, the court directed it to be filed, and it was filed on December 19, 1930. On December 26, 1930, the court entered a decree that the matter of the claim of the Citizens Bank and Trust Company of Tampa, Florida, be referred back to the Auditing Judge for the purpose of determining the amount due the claimant, and for such purpose to take such testimony and examine such witnesses and records as might be necessary to determine said amount due the claimant, the decree to be dated and to be entered of record as of September 5, 1930, all proceedings to stay meanwhile.

Meanwhile, as the result of the stipulation hereinbefore referred to, a rehearing was had on October 6, 1930, and November 3, 1930, at which time there were present Grover C. Ladner, Esq., and H. Crowell Pepper, Esq., for the executor; Robert P. Shick, Esq., for the Citizens Bank and Trust Company of Tampa, Florida; and Frank A. Harrigan, Esq., for the widow.

An adjournment was had because certain documents called for by counsel for the executor had not been produced, and for this reason, a motion presented at the hearing on November 3, 1930, by counsel for the claimant, that the damages should be assessed in the sum of $36,593.54, and that the executor be directed to pay said amount with interest from October 7, 1930, was dismissed.

Another petition was filed by counsel for the executor, praying for a citation on the claimant to show cause why the claim of the Citizens Bank and Trust Company should not be reopened and referred back to the Auditing Judge for a rehearing, and to take testimony on the after-discovered evidence and to review the claim in the light thereof, and the court granted a citation accordingly, directing all proceedings to stay in the meanwhile.

Counsel for the claimant filed preliminary objections under Equity Rule 48.

On January 20, 1931, the exceptions were sustained by this court, with leave to amend the petition within ten days after the date thereof.

On January 24, 1931, an amendment was filed and an answer thereto was filed January 30, 1931.

On March 19, 1931, the court entered its decree that the petition of the Corn Exchange National Bank and Trust Company, executor, for a rehearing and review of respondent's claim in the light of alleged after-discovered evidence, the preliminary objections of the respondent, the amendment by the petitioner of its petition and the answer of the respondent to the amendment to the petition, be referred back to the Auditing Judge to take such testimony and examine such witnesses as might be necessary to determine the matters of fact involved in any issue of fact properly joined therein, and also to pass upon the matters of law involved therein in conjunction with the order made on December 26, 1930, referring the claim of the Citizens Bank and Trust Company of Tampa, Florida, to the same Auditing Judge to determine the exact amount due the respondent as claimed, and it was directed that all proceedings were to stay meanwhile.

In obedience to the decree of the court a hearing was had on May 6, 1931, at which time counsel appeared as follows: Grover C. Ladner, Esq., and H. Crowell Pepper, Esq., for accountants; Robert P. Shick, Esq., for Citizens Bank and Trust Co., Tampa, Florida; and Frank A. Harrigan, Esq., for Sarah A. Cancelmo, widow, and for Thomas A. Del Vecchio, guardian *ad litem* of Thomas W. Cancelmo and Rosalie V. Cancelmo, minor children of decedent.

There are two main questions to be determined: First, the extent to which the estate is entitled to credit in reduction of the liability under the guaranty; and, second, whether the petitioner is entitled to a review.

As to the first question, counsel for the claimant admits that the estate is entitled to some credit. The dispute is as to the amount thereof.

Since the taking of the depositions and the time of the filing of the original adjudication there has been collected on the Gentile notes $1376, which was paid to the United Paper Company in accordance with the agreement between Mr. Edwards, Mr. Morrow and the bank. There have also been collected the following sums:

| | |
|---|---|
| May 25, 1929 | $3,096.67 |
| May 25, 1929 | 1,557.17 |
| May 25, 1929 | 433.16 |
| August 28, 1929 | 173.11 |
| March 7, 1930 | 5,937.72 |
| or a total of | $11,197.83 |

Mr. Laney, president of the Citizens Bank and Trust Company testified at this hearing that the Growers Sales Company had been given credit for all of these amounts with the exception of $3096.67.

There has also been collected since the taking of the depositions and the filing of the original adjudication $450 on notes executed by one Chardkoff.

One of the questions for determination is whether $3096.67 paid on the Gentile notes and $450 paid on the Chardkoff notes should be applied in reduction of the indebtedness under the guaranty.

From the testimony, it appears that on June 14, 1927, when the notes of $25,000 and $10,000 matured, the Growers Sales Company was unable to pay them; that the total indebtedness of the Growers Sales Company to the bank at that time, as shown by the liability ledger of the bank with the Growers Sales Company, was $38,546.67, $35,000 of which represented the amount due under the guaranty and $3546.67 of which represented the amount for which

the bank held as collateral an obligation of Mr. Edwards in the same amount. The obligation, it would seem, was a note, for the due date is given as September 12, 1927, and the number of the collateral obligation is 57,642.

Under the same number the liability ledger shows the following amounts of credit:

| | |
|---|---:|
| May 12, 1928 | $50.00 |
| June 23, 1928 | 50.00 |
| July 6, 1928 | 50.00 |
| August 17, 1928 | 50.00 |
| September 14, 1928 | 50.00 |
| November 1, 1928 | 50.00 |
| December 14, 1928 | 50.00 |
| January 8, 1929 | 50.00 |
| February 20, 1929 | 50.00 |
| May 25, 1929 | 3096.67 |
| | $3546.67 |

Were it not for the other testimony, one would naturally infer that Edwards paid the amount due on the collateral obligation held by the bank for the payment of the loan of $3546.67 made to the Growers Sales Company out of his own funds instead of out of moneys collected from Chardkoff and Gentile Brothers. And here it may be stated that it has not been shown or contended that Edwards did not in fact owe the Growers Sales Company $3546.67 on obligation No. 57,642, and that he was merely an accommodation maker, and that the real liability on the obligation, as between him and the Growers Sales Company, was that of the Growers Sales Company itself.

The justification offered is entirely different. Stated in a few words, it is that the sum of $3546.67 was due to Mr. Edwards by the Growers Sales Company and represented the balance of the purchase price due on certain machinery that had been sold by him to the Growers Sales Company, and that it was agreed between Mr. Edwards, the president of the Growers Sales Company, Mr. John M. Morrow, the secretary, and the Citizens Bank and Trust Company that when the amount due on the Gentile notes was collected, $3546.67 should be applied in payment of said indebtedness. While there is no testimony that the moneys collected, as alleged by Mr. Edwards, for his benefit, should be applied in payment of the collateral obligation held by the bank, it would seem that it was so applied in accordance with an agreement between the bank and Mr. Edwards.

The testimony on this subject is as follows:

From the depositions taken at Tampa, Florida, on February 4, 1929, attached to the original adjudication, it appears that Mr. Edwards was called as a witness on behalf of the claimant. He testified that he was president of the Growers Sales Company; that the Palmetto Packing Company was a corporation; that the stock thereof was partially owned by the Growers Sales Company; that the machinery owned by the Palmetto Packing Company was bought by the Growers Sales Company from him; that the Growers Sales Company gave him a note representing the balance due on the purchase price of the machinery; that subsequently Gentile Brothers bought the packing house of the Palmetto Packing Company, together with its machinery, and gave their notes, payable at the expiration of one and two years, respectively, for $5770.53 each; that at the time of the sale the Palmetto Packing Company owed the United Paper Company a bill for paper; that on the receipt of the Gentile notes he took them to the Citizens Bank and Trust Company,

requesting, first, that the obligation of the Palmetto Packing Company to the United Paper Company should be paid; second, that the amount due him for machinery should then be paid; and that the remainder when collected should be applied against the $35,000 under the guaranty. He further testified that he retained title to the machinery. The Auditing Judge is unable to determine just what the witness meant by this statement.

From the depositions referred to, it also appears that D. H. Laney, at one time vice-president of the Citizens Bank and Trust Company and later president, was also called as a witness. His testimony as to the application of the money collected on the Gentile notes was similar to that of Mr. Edwards.

At this hearing Mr. John M. Morrow, secretary of the Growers Sales Company, testified that he and Mr. Edwards together, in the latter part of 1927, delivered to the Citizens Bank and Trust Company the two Gentile notes; the stock of the Palmetto Packing Company, which was owned by the Growers Sales Company; also a promissory note, dated February 15, 1926, in the sum of $2500, signed by I. Cohen and Sons, payable sixty days after date and made payable to the order of the Growers Sales Company, Inc.; four shares of the capital stock of the Florida Public Service Company, endorsed on the back thereof to the Citizens Bank and Trust Company of Tampa, Florida; and notes executed by one Chardkoff aggregating $500. He further testified that he requested the bank that all of the moneys realized from the securities delivered should be applied in reduction of the indebtedness under the guaranty, with the exception of the amount due the paper company, but that Mr. Edwards insisted that there should be also deducted from the amount collected on the Gentile notes the balance due him of the purchase price of the machinery sold by him to the Growers Sales Company. He fixed the amount as $3500, and stated that it was evidenced by an open note, and that said note had been discounted by the bank. He further testified that Mr. Laney referred the matter to Mr. Edwards and Mr. Edwards replied that he wanted the sum due him paid.

With respect to the alleged lien on the machinery, Mr. Morrow testified that Mr. Edwards did not have a lien on the machinery; that the machinery bought with the packing house from Mr. Edwards had all been junked and new equipment installed, and that it was the new equipment that was sold.

At this hearing Mr. Laney was also called as a witness, and he testified, as he did before, that it was agreed, first, that the claim of the paper company should be paid; secondly, that Mr. Edwards' claim for the balance of the purchase money due on the machinery sold should be paid; and that the remainder should be applied on the indebtedness due on the guaranty.

It may be conceded that if Edwards had had an equitable lien on the Gentile notes it would have been proper for the bank to pay him the balance due on the purchase price of the machinery. Mr. Laney admitted that the only proof they had of a lien or "retained title" was Edwards' oral statement to that effect. Morrow, the secretary, denied that Edwards had a lien. The Auditing Judge takes judicial cognizance of the fact that such a lien is ordinarily required to be in writing. No written evidence of such a lien was submitted, and if there was a lien on the machinery it was lost because Mr. Morrow testified that it was junked, and that the machinery that was sold was not that sold to the Growers Sales Company by Mr. Edwards, but new equipment bought from others after such sale. The Auditing Judge rules that no competent evidence of a lien has been submitted, and that the bank had no right to apply said $3096.67, collected on the Gentile notes, in payment of the Edwards obligation.

The Growers Sales Company quit business about August, 1927, and at that time was insolvent and was unable to pay the bank what it owed it. Notwithstanding this condition of affairs, it applied $3096.67 collected on May 25, 1929, almost two years thereafter, in payment of the $3096.67 still due Edwards, having first applied $450 received from the collection of the Chardkoff notes.

It seems that the unpaid creditors at the time the Growers Sales Company ceased doing business, about August, 1927, were the bank and Edwards. As Edwards failed to pay his collateral obligation of $3546.67 to the bank at its maturity, September 12, 1927, it necessarily follows that any dividend that Edwards would have been entitled to by virtue of his claim on the $3500 note would have been payable to the bank in reduction of Edwards' obligation of $3546.67.

Just what was due on the $3500 note does not appear, but from the method adopted it would seem that there was at least $3546.67 due. More may have been due, but as there is no evidence of the exact amount, the Auditing Judge cannot assume that more than that amount was due. In other words, Edwards, as a creditor in the sum of $3545.56, would have been entitled to a dividend of 3546.67/38546.67 of $11,197.83, and this would have been applicable in reduction of his obligation of $3546.67. The residue of the amount collected would have been applicable in reduction of the guaranteed indebtedness.

By the method adopted, $3546.67 of the money collected on the securities of the Growers Sales Company was all used to pay Edwards' claim in full and in turn appropriated to discharge the collateral obligation of Edwards in that sum. The liability of the guarantors under said agreement was thus increased. Now, it is not to be forgotten that Edwards was a co-guarantor, of which fact the bank was necessarily aware. In such circumstances the protest of Morrow, the secretary, should have been heeded, and such an application of the assets of the Growers Sales Company should not have been made without the consent of the guarantors, and such consent was not obtained. If there had been done what should have been done, the bank would have been in a position to collect from Edwards the difference between $3546.67 and the *pro rata* dividend he was entitled to, and it would have been entitled to collect from the guarantors the difference between $35,000 and its *pro rata* of the assets as aforesaid. The Auditing Judge, therefore, rules that this is the extent of the liability of the guarantors.

At this point it should be noted that at the time of the original adjudication interest was claimed at the rate of 6 per cent. The court *in banc* has allowed interest on the claim without stating the rate. In the certificate of John A. Newsom, liquidator of the Citizens Bank and Trust Company, interest is calculated at the rate of 8 per cent. The Auditing Judge ruled at the time of the audit that he would not allow more than 6 per cent. In the circumstances, 6 per cent. is allowed.

In said certificate, interest is charged on the sum of $35,000 from June 15, 1927, but interest is not allowed on credit items. The Auditing Judge rules that where interest is charged on the total debit and not on the balance due, interest at 6 per cent. should be allowed on the portion of the credit items applicable to the guaranteed indebtedness.

Counsel for the accountant will prepare a schedule of distribution, in duplicate, in which he will show a calculation of the amount due, made as herein directed. He will certify to the correctness of the schedule, and when and if it is approved by the Auditing Judge, it is to be attached hereto and made part hereof.

It is further contended that credit should be allowed on the guaranteed indebtedness for the sum due on the note of $2500 made by I. Cohen and Sons, payable to the Growers Sales Company, dated February 15, 1926, the due date thereof being sixty days thereafter. Generally speaking, it is the duty of the pledgee to take the proper steps to collect the collateral, and if he fails to do so and through his neglect the amount cannot be recovered, the pledgor is entitled to a credit for the amount of the collateral.

Under the laws of Florida, an obligation not under seal, and the obligation in question is of that character, is barred after a lapse of five years, and as no suit has been instituted to collect the note, it is contended that the claimant should be held responsible for its failure to bring suit before the statute of limitations had run. It was stated, however, by Judge Hunter, one of the counsel for the claimant, that the Pittsburgh attorneys wanted a retainer and that when he asked Mr. Edwards to put it up, he declined to do so, and that suit was not brought because no one would put up the retainer. It was also stated by Mr. Shick, one of the counsel for the claimant, that Mr. Ladner knew of the existence of this obligation as early as September, 1930, at which time the statute of limitations had not yet run, and that notwithstanding this knowledge he did nothing in the matter. In the circumstances, the Auditing Judge is of the opinion, and so rules, that no credit can be allowed for the amount due on the note.

As before stated, there was also assigned to the Citizens Bank and Trust Company four shares of the Florida Public Service Company. These shares remain unsold and are in possession of the bank. Mr. Morrow stated that the value of the shares was $400. If the full amount of this award be paid, then the accountant is entitled to have the shares reassigned to it, or, if they are sold before the award is made, then credit must be given for the amount received. No credit can be allowed now.

In the amendment to the petition for citation to show cause why the order of the court, sustaining exceptions to the adjudication, should not be reopened, it is alleged that the original books and records of the bank will show that, prior to the execution of the original note, the Growers Sales Company was indebted to the claimant bank in the sum of $10,000, represented by a note dated August 9, 1926, and maturing November 7, 1926, upon which note interest was paid to the claimant bank to the date of maturity; that this indebtedness was not covered by the guaranty and was not intended so to be by the guarantors; and that after the execution and delivery of the contract of guaranty, the officers of the claimant bank, with the connivance of C. E. Stewart, vice-president of the Growers Sales Company, and without the knowledge or consent of the directors of the Growers Sales Company or the guarantors, canceled the note for $10,000 maturing November 7, 1926, and secured and accepted from said C. E. Stewart a note of the Growers Sales Company for $10,000, dated August 18, 1926, and maturing November 16, 1926; that on the same date another note for $25,000 was executed with a like maturity date; and that the obvious purpose of the cancellation of the August 9th note, eighty-one days in advance of its due date, was to fasten liability for the payment of the same upon the guarantors, notwithstanding that by the terms of the guaranty said guaranty was only intended to cover future loans, and not past due obligations; and by reason of said facts the liability under the said contract of guaranty was limited at the most to $25,000, less credits as claimed in the petition.

There was offered in evidence the liability ledger of the Citizens Bank and Trust Company with the Growers Sales Company. That shows that, prior

to execution of the two notes of $25,000 and $10,000, the Growers Sales Company was indebted to the Citizens Bank and Trust Company in the sum of $25,300, $5000 thereof being payable August 27, 1926, $10,300 thereof being payable August 10, 1926, and $10,000 thereof being payable November 7, 1926.

The liability ledger also shows that on August 18, 1926, the Citizens Bank and Trust Company gave the Growers Sales Company credit for $25,300, and the checking account of the bank, which was also offered in evidence, shows on August 18, 1926, a debit against the Growers Sales Company of a check for $25,128.31. Mr. Laney, president of the bank, who was called for cross-examination, testified that this check of $25,112 was received in payment on indebtedness of $25,300 and the difference between the amounts of $25,300 and $25,112, he stated, represented the refund of discount.

The liability ledger shows that immediately prior to the execution of the two notes for $25,000 and $10,000 nothing was due by the Growers Sales Company to the bank. On the day that the check for $25,128.31 was drawn, the checking account shows that the Growers Sales Company was given credit for the amount of the two notes, $10,000 and $25,000, less the discount of $700, or $34,300. The checking account also shows that on August 16, 1926, the balance to the account of the Growers Sales Company was $7082.06, and at the close of business on August 18, 1926, the balance was $16,010.64. Taking into consideration this testimony, it would seem that the $10,000 obligation given on August 18, 1926, was a new loan, and that out of the $34,300 the then existing indebtedness of $25,300 was paid.

Mr. Laney in his testimony denied emphatically that the $10,000 note dated August 18, 1926, was a renewal note of the $10,000 note dated August 9, 1926, and said that the said loan of $35,000 was strictly separate and apart from the $25,300.

No other evidence was offered on the subject, and no proof was offered of any connivance on the part of Mr. Stewart.

The Auditing Judge is of the opinion, and so rules, that if due diligence had been exercised, the evidence now produced could have been produced at the original audit, and a review should not be granted on the ground of after-discovered evidence.

Considering the matter on its merits, however, it would seem that the evident purpose of the parties was that the money lent should be used in part for paying all existing indebtedness and to afford an additional credit above that amount, and there is nothing in the agreement which prohibits the use of the money for that purpose. The Auditing Judge, therefore, holds that the $10,000 note dated August 18, 1926, was not a renewal note of the $10,000 note dated August 9, 1926; that the estate is, therefore, not entitled to a credit of $10,000; and, as before stated, in his opinion, the matter is *res adjudicata*.

In the amendment to the petition to reopen, it is also averred that the Citizens Bank and Trust Company accepted from the Growers Sales Company two renewal notes for $10,000 and $25,000 each, dated June 14, 1927, and maturing August 13, 1927, and accepted interest thereon to the date of the new maturity, to wit, August 13, 1927, all of which was done after the time limit set forth in the contract of guaranty, to wit, May 31, 1927.

With reference to this matter, the same remarks are applicable as have been made with respect to the note of August 9, 1926. Such evidence in the exercise of reasonable diligence could have been produced at the original hearing, and the Auditing Judge is of the opinion that a bill of review could not have been sustained on the ground of after-discovered evidence.

Considering the matter, however, on its merits, the testimony produced shows that on June 13, 1927, the Growers Sales Company sent a letter to the bank, in which it enclosed, *inter alia,* two notes in renewal of the notes on which the claim has been presented and requested that the interest be charged to their account. The bank was asked to return the old notes. On June 14, 1927, the bank addressed a letter to J. M. Morrow, in which the bank stated, *inter alia,* "The season is so nearly closed that we are not willing to accept renewals of this paper," and that it would appreciate it if Mr. Morrow would arrange to call at once in order that the matter might be gone over with him because it would be necessary for these notes to be taken up.

On June 18, 1927, Mr. Edwards and Mr. Morrow called at the bank, and a letter addressed to Mr. Morrow was then dictated, and in this letter it was stated that the bank was returning the notes for the reason that it was its understanding that the notes would be paid at the close of the season; that they were not willing to accept the renewals for the further reason that the payment of the notes was guaranteed by L. C. Edwards, J. M. Morrow, L. J. Lippmann, C. M. Bly, T. J. Cancelmo, C. E. Stewart and F. E. Nellis; and that there was a clause in the guaranty that it covered all sums prior to May 31, 1927; and that it might be construed that the bank had not the right to renew the notes after May 31, 1927. The bank requested that the matter be taken up with the guarantors and that payments be made at as early a date as was convenient.

Mr. Morrow denies that the notes were returned to him, but he does not deny that the contents of these two letters were known to him. He made an affidavit before the hearing that interest had been paid on the notes and accepted by the bank, but later made another affidavit in which he stated that he was mistaken on this point, and in his testimony before the Auditing Judge he admitted that no interest had been paid to the bank and accepted by the bank on the two renewal notes tendered.

The bills payable ledger of the Growers Sales Company was offered in evidence, which shows that two renewal notes had been given in place of the ones on which the claim is made. This evidence was objected to and admitted subject to the objection. It will suffice to say that the evidence is inadmissible because it is hearsay evidence, and, furthermore, the evidence produced at this hearing shows, in the opinion of the Auditing Judge, that the notes in question were not renewed when they fell due. The Auditing Judge, therefore, rules that the estate is liable for the payment of the two notes in question, with interest thereon at 6 per cent., subject, however, to proper credits for payments on account with interest as hereinbefore indicated.

It was also contended at the audit, taking into consideration all the circumstances of the case, it must be presumed that the interlineation "covering all sums prior to May 31, 1927," was made after the guarantors appended their signatures. Judge Hunter, of counsel, stated that he prepared the agreement and that there was no interlineation in it when he delivered it to the bank. Mr. Morrow testified that the contract was not signed by the guarantors at one place and at one time, but that it was forwarded to the different places for signature. This testimony flatly contradicts that of C. E. Stewart, vice-president of the company. In the depositions it appears that Mr. Stewart testified that all the signatures were appended at the same time. When Mr. Morrow was asked whether the interlineation was in the contract when he signed it, he said he did not know. The vital question is not whether all of the guarantors signed at the same time, but whether the interlineation was in the contract when each one of the guarantors appended his signature. On this point Mr. Stewart in his deposition stated that the interlineation was

made prior to the signing of the contract. Here, too, the evidence submitted at this hearing could, in the exercise of proper diligence, have been produced at the time of the original hearing. Considering the matter on its merits, the Auditing Judge finds as a fact that the interlineation was made on the contract before the respective guarantors signed it.

The Auditing Judge awards the balance of principal and income on hand, less the amount of the claim, to the persons and in the proportions as set forth in the original adjudication. The payment of the above award is conditioned, however, upon the Citizens Bank and Trust Company making an assignment of any and all collateral that it may own to the executor of the estate. Payment and distribution is so decreed, with leave to make all necessary assignments and transfers.

*H. Crowell Pepper* and *Grover C. Ladner*, for exceptants.

*William Hunter* and *Robert P. Shick*, contra.

VAN DUSEN, J., November 6, 1931.—Exceptions 1 and 2. A note was given by I. Cohen and Sons, apparently of Pittsburgh, to the Growers Sales Company for $2500, dated at Pittsburgh, February 15, 1926, payable sixty days after date, at Tampa, Florida, and it was assigned to the Citizens Bank, the claimant, as additional security for the loans made in August, 1926, which were guaranteed by the testator. It was then overdue, and nothing was done about collecting it except to send it to a Pittsburgh attorney for suit. He asked for a retainer, which the Citizens Bank and one of the guarantors refused to pay. It is argued that the amount of the note has been lost by the negligence of the Citizens Bank in allowing the Florida statute of limitations of five years to bar a suit.

Apparently Pennsylvania is the place to sue—at least it does not appear that any recovery can be had in Florida. The limitation of actions is governed by the law of the forum: Newton's Estate, 46 Pa. Superior Ct. 40; and there are still several months to run within the Pennsylvania six years. A creditor who holds security from the principal debtor must not be negligent in dealing with it. This means that he must do nothing affirmative to prejudice the right of the surety to resort to the security when he pays the debt and becomes entitled to subrogation. Whether the creditor is an active trustee, charged with the duty of attempting to collect the security, is a question upon which there seems to be some difference of opinion. After reading the excellent note on the subject at 37 L. R. A. (N. S.) 703, we think that the best opinion is that he is not. There is a trouble and expense about collection which the creditor is not called upon to assume, unless he thinks it necessary for his own protection, and the surety can always pay the debt and take up the security; possibly, also, he may call upon the creditor to sue upon indemnifying him against expense. See, also, Brandt on Suretyship and Guaranty, §§ 491-495; Gray *v.* Farmers' Bank, 81 Md. 631.

Another question which we do not find it necessary to consider is whether there is not a burden on him who alleges a loss to show that the note was collectible, and that there actually was a loss.

Exceptions 3 and 4. When this decedent guaranteed to the Citizens Bank the notes of the Growers Sales Company up to $35,000, the sales company already owed the bank $5000 on a note overdue, and $10,300 and $10,000 on notes not yet due. The sales company then discounted at the Citizens Bank on the faith of the guaranty a note for $25,000 and another for $10,000, and the combined proceeds were used to pay all the existing notes, including those not yet due, and about $10,000 was left over. The executors of the decedent

lay hold of the fact that one of the new notes discounted was for $10,000 and say that it was a renewal of the $10,000 note not yet due, and was in substance an attempt to make the guaranty apply to past indebtedness, which was not within its terms. The Auditing Judge has found that there was no renewal. Once the proceeds of the new notes were passed to the credit of the sales company, they could be used for any company purpose. There is no complaint of the payment of the overdue note or of the other note not yet due. There were several renewals of these new notes within the time limit of the guaranty, and the court *in banc* has held that this was proper because the guaranty by its terms was a continuing one. If a renewal at maturity would have been proper—and the bank could have refused to loan the additional $10,000 until the existing note became due—what harm was there to the guarantors in renewing it before it became due?

Exceptions 5 and 6. The original defense was based on renewals during the life of the guaranty. On review before the Auditing Judge new facts were set up, to wit, a renewal after the guaranty expired. Granting that executors often have difficulty in ascertaining the facts, no reason appears why this fact could not have been discovered as well as the other renewals in the years that elapsed before the first adjudication. However, the Auditing Judge considered the merits, and found that the renewal was offered, but not accepted, and this finding accords with the evidence.

All exceptions are dismissed and the original adjudication, as modified in the readjudication filed July 28, 1931, is confirmed absolutely.